ORIGINAL

# In the United States Court of Federal Claims

No. 16-594L
Filed: December 9, 2016
NOT FOR PUBLICATION

FILED
DEC - 9 2016
U.S. COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| CHAKCHIUMA NATION, | ) |
| Plaintiff, | ) |
| v. | ) *Pro Se*; Rule 83.1; Rule 12(b)(1), Subject-Matter Jurisdiction; Rule 12(b)(6), Failure to State a Claim; *In Forma Pauperis*. |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Sakima Iban Salih El Bey* on behalf of the Chakchiuma Nation, Memphis, TN, plaintiff *pro se*.

*Adam M. Bean*, Trial Attorney, *John C. Cruden*, Assistant Attorney General, United States Department of Justice, Environment & Natural Resources Division, Washington, DC, *Dondrae Maiden*, Of Counsel, United States Department of the Interior, Washington, DC, for defendant.

**MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

**I.     INTRODUCTION**

Sakima Iban Salih El Bey brought this action on behalf of the plaintiff in this matter, the Chakchiuma Nation ("the Chakchiuma"), seeking various declaratory, injunctive and monetary relief in connection with an alleged violation of the United States' Treaty with the Choctaw and Chickasaw ("Treaty of 1866"). The government has moved to dismiss this matter for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). In addition, plaintiff has filed a motion to proceed in this matter *in forma pauperis*, pursuant to 27 U.S.C. § 1915. For the reasons set forth below, the Court: (1) **GRANTS** the government's motion to dismiss and (2) **GRANTS** plaintiff's motion to proceed *in forma pauperis*.

1

7014 1200 0000 9093 5357

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

The Chakchiuma commenced this action on May 20, 2016. *See generally* Compl. The complaint states that "[t]he Chakchiuma were a [Moorish-American Indian with modern connotation for today's 'African-American'] tribe" of the upper Yazoo River region of the State of Mississippi. *Id.* at 1.

Mr. El Bey, a non-attorney, seeks to represent the Chakchiuma in this action. *See generally* Compl; *see* Pl. Resp. at 3. The complaint states that Mr. El Bey is the "Consul General" for the Chakchiuma. Compl. at 10. Mr. El Bey acknowledges, however, that he is not seeking any relief, or asserting any claims, in this matter on his own behalf. Pl. Resp. at 3.

In this action, the Chakchiuma allege that the United States has violated the Treaty of 1866 by failing to pay certain monies promised under this treaty to members of the Chakchiuma. Compl. at 8-10. As relief, the Chakchiuma seek the "financial benefits" due under the Treaty of 1866 and certain other monetary relief. *Id.* at 10. In addition, plaintiff also seeks a "public declaration from the U.S. Department of Interior that the Chakchiuma Nation are Black . . . Indians who must be included in the mandated benefits that non-More-ish Indians have been receiving for over 150 years" and a declaratory judgment directing the government to "retro-actively distribute invested benefits to eligible Chakchiuma Nation . . . Indians." *Id.* at 7.

As background, the Choctaw and Chickasaw Nations entered into a Reconstruction Treaty at the conclusion of the Civil War with the United States, which is known as the Treaty with the Choctaw and Chickasaw, 1866.[2] Pursuant to the terms of this treaty, these tribes sold certain lands to the United States in exchange for $300,000, and the proceeds of this transaction were to be held in trust and ultimately paid to certain persons of African descent who resided with, and had been enslaved by, the Choctaw or Chickasaw Nations and elected to leave either

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."), the government's motion to dismiss ("Def. Mot."), and the plaintiff's response to the government's motion to dismiss ("Pl. Resp.").

[2] The Treaty of 1866 was ratified on June 28, 1866 and proclaimed on July 10, 1866. *See generally* Treaty with the Choctaw and Chickasaw, April 28, 1866, 14 Stat. 769 (ratified June 28, 1866) (proclaimed July 10, 1866).

2

tribe. *See* Treaty with the Choctaw and Chickasaw, art. 3, April 28, 1866, 14 Stat. 769 (ratified June 28, 1866) (proclaimed July 10, 1866) (providing for payment to persons of African descent after the Choctaw and Chickasaw Nations' passage of laws putting such persons on equal legal footing with the Choctaw and the Chickasaw, or, if such laws were not established). The Chakchiuma allege in the complaint that they are the descendants of the persons of African descent described in the Treaty of 1866. Compl. at 8-9.

The Indian Claims Commission Act ("ICCA") is also relevant to the claim in this matter. Indian Claims Commission Act, Pub. L. No. 79-726, 60 Stat. 1049 (1946). Congress enacted the ICCA on August 13, 1946, to, among other things, establish the Indian Claims Commission to "hear and determine . . . certain claims against the United States on behalf of any Indian tribe, band or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska." *Id.* at 1050. The ICCA also places certain limitations upon the type of claims that the Indian Claims Commission could consider and on the time period during which the Commission may consider such claims. *Id.* at 1052. Specifically relevant to this case, the ICCA provides that "[n]o claim accruing after the date of the approval of [the] Act shall be considered by the Commission." *Id.* at 1050. The ICCA further provides that "[t]he Commission shall receive claims for a period of five years after the date of the approval of this Act and no claim existing before such date but not presented within such period may thereafter be submitted to any court or administrative agency for consideration, nor will such claim thereafter be entertained by the Congress." *Id.* at 1052.

### B. Procedural History

The Chakchiuma commenced this action on May 20, 2016. *See generally* Compl. On May 20, 2016, plaintiff also filed a motion for leave to proceed in this matter *in forma pauperis*, pursuant to 28 U.S.C. § 1915. *See generally* Pl. Mot. to Proceed *In Forma Pauperis*.

On July 20, 2016, the government filed an opposition to the plaintiff's motion to proceed *in forma pauperis*. Def. Opp. to Pl. *In Forma Pauperis* Mot. On July 20, 2016, the government also filed a motion to dismiss this action for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(1) and 12(b)(6). *See generally* Def. Mot.

3

Plaintiff filed a response to the government's motion to dismiss on August 15, 2016. *See generally* Pl. Resp. The government filed its reply brief on September 1, 2016. *See generally* Def. Reply. Thereafter, plaintiff filed a sur-reply by leave of the Court on September 30, 2016. *See generally* Pl. Sur-Reply.

These matters having been fully briefed, the Court addresses the pending motions.

### III. LEGAL STANDARDS

#### A. *Pro Se* Litigants

Plaintiff is proceeding in this matter *pro se*, without the benefit of counsel. And so, plaintiff is "not expected to frame issues with the precision of a common law pleading." *Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed. Cir. 1987). When determining whether a complaint filed by a *pro se* plaintiff is sufficient to invoke review by a court, such plaintiffs are entitled to a liberal construction of their pleadings. *Matthews v. United States*, 750 F.3d 1320, 1322 (Fed. Cir. 2014). But, there "'is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading.'" *Lengen v. United States*, 100 Fed. Cl. 317, 328 (2011) (citations omitted) (first set of brackets existing). In addition, although "a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, . . . the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence . . . ." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citations omitted). And so, while the Court may excuse ambiguities in the plaintiff's complaint, the Court does not excuse the complaint's failures. *See Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995); *see also Demes v. United States*, 52 Fed. Cl. 365, 368 (2002) ("[T]he leniency afforded *pro se* litigants with respect to mere formalities does not relieve them of jurisdictional requirements.") (citation omitted).

#### B. Rule 12(b)(1)

When deciding a motion to dismiss based upon a lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, plaintiff bears the burden of establishing subject-matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir.

4

1998), and must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citations omitted). And so, should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (Fed. Cl. 2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and the Court "possess[es] only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under the Tucker Act, the Court has jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2011). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Given this, to pursue a claim under the Tucker Act, a plaintiff must identify and plead a claim founded upon an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself.") (citation omitted); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages."). And so, a plaintiff must demonstrate that the source of substantive law upon which the plaintiff relies "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan*, 424 U.S. at 400 (citation omitted).

### C. Standing and Rule 83.1(a)(3)

The standing requirements that apply to Article III courts also apply to the United States Court of Federal Claims. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352 (Fed. Cir. 2009) (citing *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)). And so, standing

5

"is a threshold jurisdictional question and must be established by the party seeking to invoke this court's jurisdiction." *Saladino v. United States*, 62 Fed. Cl. 782, 793 (2004) (citation omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted) (holding that it is the burden of the party invoking federal jurisdiction to establish the three elements of standing).

To establish standing a party must show: (1) that it has "suffered an 'injury in fact;'" (2) "a causal connection between the injury and the conduct complained of;" and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). This Court has also recognized that, in limited circumstances, third-party standing may be appropriate. *Saladino v. United States*, 62 Fed. Cl. at 793. But, to have third-party standing:

> [t]he litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute, the litigant must have a close relation to the third party, and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Id.* (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (citation omitted)) (internal quotations omitted).

In addition, the Rules of the United States Court of Federal Claims address the eligibility of attorneys and *pro se* litigants to practice before this Court. In this regard, RCFC 83.1(a)(3) provides, in relevant part, that "[a]n individual who is not an attorney may represent oneself or one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court." RCFC 83.1(a)(3). And so, the Court has held that a *pro se* plaintiff may represent only himself and "immediate family" members under Rule 83.1(a)(3). *See Fast Horse v. United States*, 101 Fed. Cl. 544, 547-48 (2011).

### D. Rule 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), this Court must also assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson*, 551 U.S. at 94. And so, to survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556

6

U.S. 662, 678 (2009). When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678 (citation omitted). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant. *Iqbal*, 556 U.S. at 663-64, 679 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## IV. DISCUSSION

The government has moved to dismiss this matter upon three grounds. Def. Mot. at 6. First, the government seeks dismissal of this matter for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1), because Mr. El Bey may not represent the Chakchiuma in this case. *Id*. Second, the government also seeks to dismiss this matter pursuant to RCFC 12(b)(1) upon the ground that the Chakchiuma's treaty-based claim in this matter is time-barred. *Id*. In addition, the government seeks to dismiss this matter for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), upon the ground that the Court cannot award the declaratory and injunctive relief that the Chakchiuma seek in this case. *Id*.

For the reasons discussed below, the Court agrees that Mr. El Bey may not represent the Chakchiuma in this matter and that he also lacks standing to pursuant this litigation. In addition, the Court does not possess subject-matter jurisdiction to consider the treaty-based claim alleged in the complaint, because the claim is time-barred. And so, the Court must dismiss this matter pursuant to RCFC 12(b)(1).

### A. The Court Does Not Possess Jurisdiction To Consider This Matter
#### 1. Mr. El Bey Lacks Standing To Bring This Action

As an initial matter, Mr. El Bey, a non-attorney, may not pursue this matter on behalf of the Chakchiuma. The Rules of the United States Court of Federal Claims specifically address the question of when a *pro se* litigant may practice before this Court. Specifically, RCFC 83.1(a)(3) provides, in relevant part, that "[a]n individual who is not an attorney may represent oneself or one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court." RCFC 83.1(a)(3). This Court has also held that a

7

*pro se* plaintiff may represent only himself and "immediate family" members under Rule 83.1(a)(3). *See Fast Horse*, 101 Fed. Cl. at 547-48.

It is undisputed in this matter that Mr. El Bey is not an attorney, nor is he a member of the Bar of this Court. Pl. Resp. at 3. Mr. El Bey also acknowledges that he does not seek to bring this action on behalf of a member of his immediately family. *Id.* Rather, as the complaint makes clear, the treaty-based claim asserted in the complaint is brought on behalf of the Chakchiuma. *See generally* Compl. Given these undisputed facts, Mr. El Bey is not eligible to represent the Chakchiuma in this matter, or to bring a claim on the Chakchiuma's behalf. RCFC 83.1; *see also Fast Horse*, 101 Fed. Cl. at 547-48. And so, any claim that Mr. El Bey has put forth on behalf of the Chakchiuma is barred from this Court.

In addition, even if Mr. El Bey were to seek to pursue this litigation on his own behalf, the complaint also makes clear that he lacks standing to do so. It is well established that standing "is a threshold jurisdictional question and must be established by the party seeking to invoke this court's jurisdiction." *Saladino*, 62 Fed. Cl. at 793; *see also Lujan*, 504 U.S. at 561 (citations omitted) (holding that it is the burden of the party invoking federal jurisdiction to establish the three elements of standing.). And so, for Mr. El Bey to have standing here, he must show: (1) that he has "suffered an 'injury in fact;'" (2) "a causal connection between the injury and the conduct complained of;" and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (citations omitted). In addition, to show that he has third-party standing, Mr. El Bey "'must have suffered an "injury in fact," thus giving him . . . a "sufficiently concrete interest" in the outcome of the issue in dispute, . . . have a close relation to the third party, and there must exist some hindrance to the third party's ability to protect [its] own interest.'" *Saladino*, 62 Fed. Cl. at 793 (citation omitted).

In this case, Mr. El Bey does not allege that he has suffered any harm or injury in fact as a result of the treaty violation alleged in the complaint. Pl. Resp. at 3. Nor has Mr. El Bey shown that a hindrance exists to prevent the Chakchiuma from protecting its own interest with respect to any claim based upon the Treaty of 1866. *Id.*; *see also Saladino*, 62 Fed. Cl. at 793. Given this, Mr. El Bey had not established that he has standing to bring this matter. And so, the Court must dismiss this matter for lack of subject-matter jurisdiction. RCFC 12(b)(1).

8

### 2. The Claim Alleged In The Complaint Is Time-Barred

Dismissal of this matter for lack of subject-matter jurisdiction is also warranted because the treaty-based claim alleged in the complaint is time-barred. In the complaint, the Chakchiuma seek monetary, declaratory and injunctive relief based upon an alleged violation of the Treaty of 1866.[3] Compl. at 7, 10. This claim is untimely. And so, for the reasons discussed below, the Court must dismiss this claim for lack of subject-matter jurisdiction. RCFC 12(b)(1).

First, as the government correctly notes in its motion to dismiss, the Chakchiuma's treaty-based claim is subject to the Indian Claims Commission Act ("ICCA") and this claim is also time-barred under that Act. Def. Mot. at 6, 8-11; Indian Claims Commission Act, Pub. L. No. 79-726, 60 Stat. 1049 (1946). Congress enacted the ICCA in 1946 to, among other things, establish the Indian Claims Commission to "hear and determine . . . claims against the United States on behalf of any Indian tribe, band, or other identifiable group of Americans Indians residing within the territorial limits of the United States." Indian Claims Commission Act, Pub. L. No. 79-726, 60 Stat. 1049, 1050 (1946). Under the ICCA, the Indian Claims Commission has jurisdiction to consider, among other things:

> (1) claims in law or equity arising under the Constitution, laws, *treaties of the United States*, and executive orders of the President; [and] (2) all other claims in law or equity, including those sounding in tort, with respect to which the claimant would have been entitled to sue in a court of the United States if the United States was subject to suit. . . .

*Id.* (emphasis supplied). The ICCA also imposes a five-year limitations period for bringing a claim before the Indian Claims Commission. *Id.* at 1052. In this regard, the Act provides that, "[t]he commission shall receive claims for a period of five years after the date of the approval of this act [August 13, 1946] and no claim existing before such date but not presented within such

---

[3] As the government notes in its motion to dismiss, the complaint does not clearly identify the treaty alleged to have been violated in this matter. Def. Mot. at 10. Although the United States entered into a treaty with the Choctaw and Chickasaw Nations in 1866, that treaty was not ratified in Fort Smith. Treaty with the Choctaw and Chickasaw, April 28, 1866, 14 Stat. 769 (ratified June 28, 1866) (proclaimed July 10, 1866); *see also* Def. Mot. at 10.

[five-year] period may thereafter be submitted to any court or administrative agency for consideration, nor will such claim thereafter be entertained by Congress." *Id.* at 1052.

When read in the light most favorable to the plaintiff, the complaint demonstrates that the Chakchiuma's treaty-based claim in this case accrued many decades ago. In this regard, the Chakchiuma allege in the complaint that the United States violated the Treaty of 1866 by failing to pay certain monies promised under this treaty to members of the Chakchiuma. Compl. at 7, 10. The Treaty of 1866 provides, among other things, that the Choctaw and Chickasaw Nations would sell certain land to the United States in exchange for $300,000, and that the proceeds of this transaction would be paid to certain persons of African descent who resided with, and had been enslaved by, the Choctaw or Chickasaw and elected to leave the tribes after the Civil War. *See* Treaty with the Choctaw and Chickasaw, art. 3, April 28, 1866, 14 Stat. 769 (ratified June 28, 1866) (proclaimed July 10, 1866). The treaty also provides that the individuals eligible to receive these monetary benefits could do so within 90 days of the passage of tribal laws ensuring their emancipation and rights, or within two years of the treaty's passage, if such laws were not passed. *Id.* Given this, it would appear that any claim under the Treaty of 1866 would have accrued no later than 1868. *Id.*

As discussed above, the ICCA vests jurisdiction in the Indian Claims Commission to consider claims in law or equity arising under the treaties of the United States on behalf of any Indian tribe or other identifiable group of American Indians residing within the territorial limits of the United States. *See generally* Indian Claims Commission Act, Pub. L. No. 79-726, 60 Stat. 1049 (1946). For claims that accrued before 1946, like the treaty-based claim at issue here, section 12 of the ICCA also requires that such a claim be brought to the Indian Claims Commission before August 13, 1951. *Id.* at 1052. It is without dispute that the Chakchiuma have not done so with respect to the treaty-based claim at issue in this litigation. *See generally* Pl. Resp. And so, this claim is time-barred under the ICCA.

The Chakchiuma's treaty-based claim is also time-barred under the six-year statute of limitations period set forth in 28 U.S.C. § 2501. In this regard, title 28, United States Code, section 2501, provides, in pertinent part, that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501; *see also Abbas v. United States*, No. 16-1342,

10

2016 WL 7100358 (Fed. Cir. Dec. 6, 2016) (affirming the United States Court of Federal Claims' finding that plaintiff's claim was barred under 28 U.S.C. § 2501 where he failed to bring that claim within six years of its accrual); *Ingrum v. United States*, 560 F.3d. 1311, 1314 (Fed. Cir. 2009). As discussed above, the Chakchiuma's treaty-based claim in this case appears to have accrued more than a century ago.[4] And so, again, this claim is untimely and the Court does not possess subject-matter jurisdiction to entertain it in this litigation.[5] RCFC 12(b)(1).

### B. The Court Grants The Chakchiuma's Motion For Leave To Proceed *In Forma Pauperis*

As a final matter, the Chakchiuma have also moved to proceed in this matter *in forma pauperis*. *See generally* Pl. Mot. to Proceed *In Forma Pauperis*. This Court may authorize commencement of a suit without prepayment of fees when a person submits an affidavit including a statement of all assets, a declaration that he or she is unable to pay the fees, and a statement of the nature of the action and a belief that he or she is entitled to redress. *See* 28 U.S.C. § 1915(a)(1). The Chakchiuma have submitted a declaration seeking an exemption from paying the Court's filing fees, but have not submitted all of the information required under 28 U.S.C. § 1915(a)(1). *Id*; *see generally* Pl. Mot. to Proceed *In Forma Pauperis*. Nonetheless, in light of the Court's determination that it must dismiss this matter for lack of subject-matter jurisdiction, the Court grants the Chakchiuma's motion for leave to proceed *in forma pauperis* for the limited purpose of resolving the government's motion to dismiss.

---

[4] The Chakchiuma also argue that the statute of limitations period should be tolled in this case due to "Fraud in Treaty." Pl. Resp. at 6-10. In this regard, plaintiff further argues that the Chakchiuma were not aware of the Treaty of 1866, or of the monetary benefits provided for under this treaty, because the Choctaw and Chickasaw conspired with the United States to drive the Chakchiuma from the tribal nations. *Id.* at 6-8. Plaintiff does not explain, however, how these circumstances, even if true, prevented the Chakchiuma from pursuing their treaty-based claim for more than a century after the alleged events occurred. Moreover, the limitations period under 28 U.S.C. § 2501 is a jurisdictional prerequisite to bringing the Chakchiuma's claim before this Court. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008).

[5] The government has also moved to dismiss plaintiff's complaint for failure to state a claim upon the ground that the remedies that the Chakchiuma seek in this matter are not available in this Court. Def. Mot. at 12-13; RCFC 12(b)(6). Because the Court concludes that it does not possess subject-matter jurisdiction to entertain this matter, because Mr. El Bey lacks standing to pursue this claim on his own behalf and because the treaty-based claim asserted in the complaint is time-barred, the Court does not reach this remaining issue.

## V. CONCLUSION

In sum, because Mr. El Bey may not represent the Chakchiuma in this matter and lacks standing to bring this matter in his own right, the Court does not possess subject-matter jurisdiction to consider this case. The Court also does not possess subject-matter jurisdiction to consider this matter because the Chakchiuma's treaty-based claim is time-barred. And so, the Court must dismiss this matter pursuant to RCFC 12(b)(1).

In addition, because it is in the interest of justice, the Court grants the Chakchiuma's motion to proceed *in forma pauperis* for the limited purpose of resolving the jurisdictional issues raised in the government's motion to dismiss.

For the foregoing reasons, the Court:

1. **GRANTS** the government's motion to dismiss; and
2. **GRANTS** the Chakchiuma's motion for leave to proceed *in forma pauperis*.

The Clerk's Office is directed to **ENTER** final judgment in favor of the government, **DISMISSING** the complaint.

No costs.

**IT IS SO ORDERED.**

_____
LYDIA KAY GRIGGSBY
Judge